146 So. 155

**LOTZ v. IBERVILLE BANK & TRUST CO.**
**et al.**

No. 31521.

Jan. 3, 1933.

Rehearing Denied Jan. 30, 1933.

Alfred D. Danziger, of New Orleans, Miller & Heintz, of Covington, and Fred G. Benton, of Baton Rouge, for appellants.

Borron, Hebert & Owen and C. C. Bird, all of Baton Rouge, for appellees.

ODOM, J.

The plaintiff filed three separate suits in the district court against the above-named defendants and as the issues involved in each, with one exception, are identical, they were consolidated for the purpose of trial and were submitted and argued in this court as one case, and we shall so consider them in this opinion.

The principal issues in these cases were considered and disposed of in the case of Paul Polizzotto et al. v. Mrs. Beulah Richards Hart, 176 La. 564, 146 So. 151, this day decided. The

plaintiff here intervened in that case and attacked the validity of certain notes and a mortgage made on February 27, 1922, by Mrs. Hart through her husband, Lewis B. Hart, as agent, by virtue of a power of attorney alleged to have been executed by Mrs. Hart. That mortgage operated against certain real estate situated in Iberville parish, which was transferred by donation propter nuptias to Mrs. Hart and which was subsequently sold by Mrs. Hart through her husband as agent to the present plaintiff, Mrs. Lotz. In these suits, Mrs. Lotz brings direct actions against the holders of those notes and asks that it be decreed that they and the mortgage securing them are invalid, null and void on the identical grounds set up in the other suit.

There are also involved in these suits two other notes, each for $2,000, dated April 28, 1922, and secured by mortgage on the same property. These also and the mortgage securing them were made by Mrs. Hart through her husband as agent by virtue of the same power of attorney. The reasons for holding the first mortgage valid are applicable to the second mortgage and we shall not restate them here.

Mrs. Lotz alleges in these suits that the defendants are not bona fide holders of the notes in due course, that they acquired them with full knowledge of their infirmities. This point is disposed of by our holding that they were legally executed for a valuable and a valid consideration.

In passing we may state that the two $2,-000 notes dated April 28th, like those dated February 27th, were made and used to pay a debt due by Lewis B. Hart at the time he

made the donation propter nuptias to Mrs. Richards. We so held in Hart v. Polizzotto, 168 La. 356, 122 So. 64.

We held in the suit No. 31520 that the $7,-000 mortgage was binding on Mrs. Hart under the circumstances shown even though the proceeds of the notes were used to pay a debt due by her husband prior to the marriage. The reasons for so holding in that case are applicable to the other notes and mortgage here attacked.

■ (2) Louis Ochs, one of the defendants, acquired the two $2,000 notes dated April 28, 1922, to which we have referred as the second mortgage notes made by Mrs. Hart, and one of the $2,000 notes secured by the other mortgage. In April, 1929, Ochs obtained a judgment on those notes against Mrs. Hart, the same to operate in rem only against the property mortgaged. Mrs. Lotz, the present plaintiff, who acquired the property in August, 1925, more than three years after the mortgages and the notes were made, attacks the validity of that judgment, alleging that it is null, void, and of no effect as to her for two reasons. Her first ground of attack is that although she is and was at the time Ochs brought suit on the notes the owner and in possession of the property against which the proceedings were brought, she was not made a party to the suit, was not notified or cited, and made no appearance therein. Her second ground of attack is that the proceedings were against Mrs. Hart when as a matter of fact she was dead at the time and her heirs were not cited.

There is no merit in the first ground of attack. The mortgages imported a confession

of judgment and contained the pact de non alienando. Article 734 of the Code of Practice provides that:

"When the creditor is in possession of such an act, he may proceed against the debtor or his heirs, by causing the property subject to the privilege or mortgage to be seized and sold, on a simple petition, and without a previous citation of the debtor, in the manner laid down in the third paragraph second section, third chapter * * * of this Code; provided in all cases where the property of the debtor is under the administration of an executor, administrator, syndic, or other fiduciary officer, the proceedings may be conducted against such executor, administrator, syndic or other fiduciary officer."

Ochs proceeded against Mrs. Hart direct and ignored Mrs. Lotz, who was then the owner in possession of the property.

The mortgage contains the following clause immediately following the description of the property:

"Which the said mortgagor binds and obligates herself and her heirs and assigns not to sell, alienate or encumber to the prejudice of this act."

Under the settled jurisprudence of this state, the holder of a note secured by a mortgage containing the pact de non alienando may proceed direct against the original mortgagor and ignore the transferees of the property. The rule is otherwise where the mortgage does not contain such clause.

Taylor v. Pipes, 24 La. Ann. 553; Avegno v. Schmidt & Ziegler, 35 La. Ann. 585; Jefferson et al. v. Stringfellow et al., 148 La. 223, 86 So. 744.

■ The second ground of attack is likewise without merit. Mrs. Hart resided in New Orleans at the time the mortgage was made but moved to Terrell, Tex., where she resided until her death on August 6, 1927, practically two years prior to the date on which Ochs instituted his suit, which was in April, 1929. Mr. Ochs had no knowledge of Mrs. Hart's death and on the trial it was admitted by counsel for all parties that her succession was never opened in this state. The hypothecated property was not under the administration of an executor, administrator, syndic, or other fiduciary officer (Code Prac. art. 734), nor had a single heir or any heirs accepted the succession. Code Prac. arts. 65, 66.

The plaintiff, assuming that Mrs. Hart, the mortgagor, was living, alleged that she was an absentee, a resident of Terrell, Tex., and not represented in this state. He prayed that an attorney at law be appointed to represent her. The court appointed Mr. Jas. Nicolosi, an attorney of the local bar, who accepted the appointment and at once addressed a letter to Mrs. Hart at Terrell, Tex., notifying her of the action. This letter was written on April 11th, and according to the postmark, reached Terrell on the 13th. Not having received a reply to his letter, Mr. Nicolosi filed answer to the suit on April 17th, denying generally and specially the allegations of the petition. After issue thus joined, the case was set for trial, taken up, tried, evidence adduced, and judgment was rendered for plaintiff and against Mrs. Beulah Richards Hart, in rem, only, for the amount sued for with recognition of plaintiff's special mortgage on the property described

therein and ordering the same sold to satisfy plaintiff's debt.

This judgment is attacked by Mrs. Lotz on the ground that the mortgage debtor was dead at the time these proceedings were had and for that reason plaintiff should have proceeded against Mrs. Neely, her sole heir.

We cannot lend sanction to the proposition that in a case like this, where a creditor is in possession of an act importing a confession of judgment and containing the pact de non alienando, he cannot proceed to foreclose when his debt matures in a direct action against the original mortgagor merely because the mortgagor happens to be dead.

Article 737 of the Code of Practice provides that:

"If the debtor who has granted the privilege or mortgage is absent, and not represented in the State, or if he can not be found and served after diligent effort, though he may still reside within the State, the judge, at the request of the plaintiff, shall appoint an attorney, to represent debtor to whom notice of the demand shall be given in the manner above directed, and contradictorily with whom the seizure and sale shall be prosecuted."

Article 734 provides that, when a creditor is in possession of an act importing a confession of judgment, he may proceed against the debtor or his heirs "by causing the property subject to the privilege or mortgage to be seized and sold, on a simple petition, and *without a previous citation of the debtor.*" (Italics ours.)

It is manifest that the purpose of these and other related articles of the Code with reference to foreclosure proceedings is to put promissory notes secured by mortgages importing a confession of judgment in a class to themselves, to give them exceedingly high rank as securities, and make them attractive to investors. To give them this rank and to make them attractive, not only is the holder of them given the highest ranking pledge on the real estate encumbered, but he is afforded a simple, easy, and speedy method of realizing on the collateral. He may seize and sell the pledged property to satisfy his claim without previous citation to the debtor, the only notice required being three days. And this need not be served on him unless present. To obtain the order to sell the creditor is not required to make proof of his claim in a judicial proceeding after issue joined as in ordinary proceedings. All he need do is to present his application to seize and sell the property to the judge with the notes and a certified copy of the mortgage and the order is granted ex parte. This is because the mortgagor in the act of mortgage itself confesses judgment and publishes to the world that he owes the debt and that he will do no act to hinder or retard the collection of the debt or to impair the security.

These provisions of the Code are impliedly written into every act of mortgage of this kind. So that the debtor not only promises to pay the debt when due, but agrees that his property may be seized and sold without notice to him personally if he be not present and available, and if he be absent, that an attorney may be appointed to receive the notice in his stead.

In Ouachita National Bank of Monroe v.

Fuller, 159 La. 31, 105 So. 90, it was held that in a foreclosure via ordinaria where the creditor holds a mortgage importing a confession of judgment on a nonresident's property and judgment in rem only is sought, which is the case in the present suit, citation upon the mortgagor personally is not necessary in view of Code Prac. arts. 163, 263, 737.

It is certain, we think, that the lawmaker did not intend that a creditor holding notes secured by such acts of mortgage, in order to foreclose, should do more than ascertain that the mortgagor is absent from the state and not represented or though he still reside in the state "if he cannot be found and served after diligent effort." If he be absent from the state and not represented therein or if he cannot be found, the creditor may have an attorney appointed to represent him and proceed with his execution.

It was never intended that the creditor should, before proceeding, ascertain whether the mortgagor be still living for this he might never be able to do. Under the Code when the debtor is absent or cannot be found, the creditor is authorized to proceed as though his debtor were alive, and if he complies with the codal provisions, the foreclosure is valid even though it subsequently develops that the mortgagor is dead. The attorney appointed under article 737 of the Code of Practice represents the absent mortgagor if living and his heirs if he be dead. If this were not true, such securities would be less attractive and less valuable, the mortgagor would be hampered in his efforts to secure loans on his real estate and the stability of titles made under foreclosure proceedings would be destroyed.

In Abbott v. Pratt, 144 La. 741, page 749, 81 So. 296, 298, the court on rehearing in discussing this question, said:

"In executory proceedings, the judge is not permitted to consider anything but the authentic evidence in granting the writ, and if you wished to determine the question of residence, with whom could it be done? Would it not necessarily have to be with a curator or attorney? If so, how much more effective would such a proceeding be, as to the debtor, than if a curator or attorney were appointed in the first instance? Yet, must the creditor be denied his remedy, and must his security be rendered valueless through the unwillingness of prospective purchasers to bid at such a sale, because of the creditor's inability to locate his debtor? If so, then an attractive form of security which the lawmaker has endeavored to provide, and which the solemn undertaking of the contracting parties attempted to put in that category, becomes a snare that the dishonest debtor may use at his pleasure, at least to the extent of provoking delays and litigation which the average investor would invariably steer clear of."

In Richardson v. McDonald, 139 La. 651, 71 So. 934, it was held that article 737 of the Code of Practice authorizing the appointment of an attorney to represent the absent mortgagor and have the foreclosure proceeding in rem prosecuted contradictorily against him, "where the mortgagor has confessed judgment and expressly authorized such proceedings, are not so unjust or unreasonable as to destroy or impair a fundamental right, and do not violate the Fourteenth Amendment of the Constitution of the United States, nor article 2 of the Constitution of this state."

The case of Tell v. Senac et al., 122 La. 1040, 48 So. 448, involved a judgment in a partition proceeding where a curator ad hoc was appointed for an absentee. It was there held that the curator ad hoc "represents the absentee if alive, and represents the interest of the absentee in the property if he has departed this life."

While this was a partition suit and the absentee represented by a curator ad hoc, the reasoning in the case is pertinent here.

See Huber v. Oil Syndicate, 111 La. 747, 35 So. 889.

■ Mrs. Neely, the heir of Mrs. Hart, was herself an absentee, so that if plaintiff had asked that the attorney be appointed to represent the heirs of the mortgagor instead of the mortgagor, the results would have been the same. The attorney appointed under article 737 of the Code of Practice whether for the mortgagor or the heirs, is not required to communicate with or notify either. He represents them for the purposes of foreclosure.

Counsel for Mrs. Lotz say that Messrs. Barron & Hebert, who represented Mr. Ochs in the foreclosure proceeding, knew that Mrs. Hart was dead. We do not find from the record that either had actual knowledge of her death. Certain it is that Mrs. Neely had not been recognized as Mrs. Hart's heir nor had she accepted the succession, nor was the succession under administration in this state.

The trial court rejected plaintiff's demands in toto. For the reasons herein assigned and for the reasons assigned in the case of Polizzotto v. Hart (La. Sup.) 146 So. 151, this day decided, the judgment appealed from is affirmed.